# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | |
|---|---|
| SARAH E. BIEGEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:14-cv-00061-JAR |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Sarah E. Biegel's ("Biegel") application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.*

### I. Background

On September 16, 2010, Biegel filed an application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.*, alleging disability beginning February 25, 2010. (Tr. 296.) The Social Security Administration denied Biegel's claim on November 30, 2010. (Tr. 296.) She filed a timely request for a hearing before an administrative law judge ("ALJ") on March 23, 2011. (Tr. 296.) Following a hearing on September 19, 2012, in Hannibal, Missouri, the ALJ issued a written decision on January 18, 2013 upholding the denial of benefits. (Tr. 314.) Biegel then requested review of the ALJ's decision by the Appeals Council on March 19, 2013 (Tr. 147), which was denied on May 29,

2014. (Tr. 1-6.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Biegel filed this appeal on June 18, 2014. (Doc. No. 1.) The Commissioner filed an Answer. (Doc. No. 10.) Biegel filed a brief in support of her complaint (Doc. No. 12) and the Commissioner filed a brief in support of the answer. (Doc. No. 19.) Biegel did not file a reply.

## II. Decision of the ALJ

The ALJ determined Biegel had not engaged in substantial gainful activity since September 16, 2010, the date of application. (Tr. 299.) The ALJ found Biegel had the severe impairments of major depressive disorder, panic disorder without agoraphobia, post-traumatic stress disorder, attention deficit hyperactivity disorder, polysubstance dependence, and antisocial personality disorder. (Tr. 299.) The ALJ also considered Biegel's alleged impairments due to back pain, knee pain, myofascial trigger points, and obesity, but determined these impairments to be nonsevere. (Tr. 299-300.) The ALJ concluded that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 300.) After considering the entire record, the ALJ determined Biegel had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with nonexertional limitations: Biegel is limited to simple, routine, and repetitive tasks, and limited to occasional changes in the work setting with no interaction with the public and only superficial interaction with coworkers. (Tr. 302.)

Additionally, however, the ALJ found that Biegel will be off task 25 percent during the work period due to her substance abuse. (Tr. 300, 302-304.) Based on this latter limitation, the ALJ found there are no jobs that exist in significant numbers in the national economy that Biegel can perform. (Tr. 305.) The ALJ determined that if Biegel ceased substance abuse, however, she

would not be off task 25 percent of the time, and would therefore not suffer from an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 299, 305.) The ALJ concluded that if Biegel ceased substance abuse, she would have the RFC to perform a full range of work at all exertional levels, with remaining nonexertional limitations as follows: she would be limited to simple, routine, and repetitive tasks, and limited to occasional changes in the work setting with no interaction with the public and only superficial interaction with coworkers. (Tr. 307.) Thus, the ALJ concluded Biegel's substance abuse is a "contributing factor material to the determination of disability because [Biegel] would not be disabled if she stopped substance abuse." (Tr. 314.)

Based on these findings, the ALJ determined that Biegel was not disabled within the meaning of the Social Security Act from September 16, 2010, through the date of the decision. (Tr. 314.) Biegel appeals the ALJ's decision, arguing that the ALJ erred in finding that substance abuse is a contributing factor material to an otherwise favorable disability determination, and that new evidence submitted to the Appeals Council undermines the ALJ's finding.

**III.  Administrative Record**

The following is a summary of the relevant evidence before the ALJ.

**A.  Hearing Testimony**

The ALJ held a hearing in this matter on September 19, 2012. (Tr. 349.) Biegel testified and was represented by counsel. Id. Susan Shea, a vocational expert, also testified at the hearing. (Tr. 394.)

### 1. Biegel's testimony

At the time of the hearing, Biegel was 25 years old. (Tr. 355.) She is single and does not have children. Id. At the hearing, Biegel testified she had not worked in approximately two years; her last job was at a Subway in Shelbina, Missouri. Id. She lives with a friend in an apartment home. (Tr. 356.) She does not have problems doing housework as long as she doesn't "do a lot of bending." (Tr. 368.) She is on Medicaid, but receives no other state assistance. (Tr. 356.) Biegel graduated high school but received no further training or certification. (Tr. 357.) She testified that she has held five or six jobs in her life, but that these ended when she stopped returning to work because "[p]eople get too close to me and I don't like it." Id. She spends most of her time "on the couch, watching TV." (Tr. 373.)

Biegel has been diagnosed with bipolar disorder. (Tr. 358.) At the time of the hearing, she testified to seeing nurse Carol Greening for medication, Ted Oliver for counseling, and a social worker. Id. Biegel experiences anxiety around groups of people that can cause her to break out in hives. (Tr. 359.) She has panic attacks on a daily basis (Tr. 360.) and struggles with cutting herself. (Tr. 363.) She has attempted suicide multiple times. (Tr. 366.) Biegel has scoliosis, and states that her back and knees hurt every day, but stated she has no major physical complaints. (Tr. 367.) At the time of the hearing she was taking Carbatrol, Celexa, BuSpirone, Seroquel, Lunesta, and Klonopin. Id.

Biegel has felony convictions for possession of a controlled substance and for theft from her employer while working at a Casey's General Store. (Tr. 357.) She was convicted at ages 17 and 19, respectively. Id. Biegel does not have a driver's license as she received a DWI about a year and a half prior to the hearing. (Tr. 364.) She testified that her sobriety date coincided with that DWI, but she did admit to having "a couple beers two months ago." (Tr. 369.) Her testimony

as to the status of her current drinking habits was generally inconsistent; she remarked, regarding staying inside during the day, "I think that's why I drink all the time." (Tr. 374.) She has attended inpatient rehabilitation for alcohol addiction on approximately four different occasions, and has completed at least three such programs. (Tr. 365, 372.) Upon examination by the ALJ, Biegel admitted that most of her medical records "involve alcohol or marijuana." (Tr. 370.) Biegel testified that she was often "on and off" marijuana and alcohol (Tr. 371), and that she functioned better when she was off marijuana and alcohol "than I was [functioning] when I was on it." (Tr. 371.) She also drank while taking her prescription medications. (Tr. 371.) Biegel explained that she has "a problem with not, not being able to stop drinking." (Tr. 374.)

### 2. Testimony of vocational expert

Vocational expert Susan Shea ("Shea") also testified at the hearing. In a hypothetical, the ALJ asked Shea to assume a person of the same, education, and work experience as Biegel who has no exertional limitations, but is limited to simple, routine, and repetitive tasks and is limited to occasional changes in the work setting, with superficial interaction with the public and with coworkers. (Tr. 376.) Shea determined that such a person would be able to perform a job such as manufacturing helper, Dictionary of Occupational Titles ("DOT") 809.687-014, SVP of 2. (Tr. 376.) Shea estimated there are 11,000 such jobs being performed in the state of Missouri and 524,000 such jobs being performed nationally. Id. In addition, such a person could perform the job of laundry worker, DOT 361.685-018, SVP of 2. Id. There are approximately 5,000 such jobs being performed in the state of Missouri and approximately 258,000 such jobs being performed nationally. Id. And finally, Shea testified that such an individual could perform a machine-feeding job, DOT 699.686-018, SVP of 2. (Tr. 377.) There are approximately 11,000 such jobs

5

being performed in the state of Missouri and approximately 500,000 such jobs being performed nationally. Id.

In a second hypothetical, the ALJ asked Shea to assume the same factors identified above. In addition, the ALJ asked Shea to assume that the hypothetical individual was also limited to no production rate or pace work, although competitive production requirements would still exist. (Tr. 377.) Further, the individual would be limited to no interaction with the public. Id.

Shea testified that the jobs reported in the first hypothetical would remain available. Id. Shea also testified that an individual cannot typically be off more than ten percent of the time, and that no more than two absences per month will be allowed on a consistent basis. (Tr. 378.) Therefore, Shea determined that if restrictions of greater than ten percent of time spent off task or more than two unexcused absences per month were added to either of the above hypotheticals, no jobs would be available in the national economy. (Tr. 378.)

Biegel's counsel also asked questions of the vocational expert. Upon questioning by Biegel's attorney, Shea testified that the jobs described in the hypotheticals would require an interview process that would necessitate interacting with people. (Tr. 378.) The vocational expert also testified that even with the jobs presented, there would be minimal interaction with other employees at break times or in similar situations. (Tr. 379.)

### B. Medical Records

The ALJ summarized Biegel's medical records at Tr. 299-314. Relevant medical records are discussed as part of the analysis.

### IV. Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental

6

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has

one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F. Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935,

942 (8th Cir. 2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
(5) The corroboration by third parties of the claimant's physical impairment;
(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

### V. Discussion

In her appeal of the Commissioner's decision, Biegel raises two issues. First, Biegel alleges the ALJ erred in finding that Biegel's substance abuse is a contributing factor material to a determination of disability. (Doc. No. 12 at 5.) Second, Biegel alleges that new evidence submitted to the Appeals Council undermines the ALJ's assignment of Biegel's RFC. (Doc. No. 12 at 10.) Upon review, the Court finds substantial evidence in the record to support the ALJ's decision.

**Substance Abuse**

Biegel argues that her medical records indicate that her "symptoms persist even when sober," and that it was therefore erroneous for the ALJ to conclude that Biegel's substance abuse was a material contributing factor to her impairments. (Doc. No. 12 at 10.) The Commissioner responds that the ALJ properly found that Biegel's substance abuse exacerbated her symptoms and that, but for her substance abuse, Biegel would not be under a total disability. (Doc. No. 19 at 3.) Upon review, the Court finds that the ALJ followed the correct procedure with regard to assessing Biegel's substance abuse as it relates to her disability, and that the ALJ's decision is supported by substantial evidence.

20 CFR §§404.1535 and 416.935 set out the procedures for determining disability when a claimant suffers from alcoholism or substance abuse:

> (a) *General.* If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (b) *Process we will follow when we have medical evidence of your drug addiction or alcoholism.*
>
> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 CFR §§404.1535, 416.935. See also Brueggemann v. Barnhart, 348 F.3d 689, 693 (8th Cir. 2003) ("Since certain 1996 amendments to the Social Security Act, if alcohol or drug abuse comprises a contributing factor material to the determination of disability, the claimant's application must be denied."). Stated more succinctly, an ALJ's denial of benefits will be upheld where 1) there is a determination of disability, 2) drug or alcohol use is a concern, 3) there is substantial evidence on the record regarding what limitations will remain in the absence of the alcohol or drug abuse, and 4) the ALJ concludes that alcohol or substance abuse is a contributing factor material to the determination of disability. See id. at 695.

Here, the ALJ determined that even without alcohol or substance abuse, "[Biegel's] remaining limitations would cause more than a minimal impact on [her] ability to perform basic work activities," and concluded that Biegel would suffer from a severe impairment even if she were to curb her abuse of alcohol and drugs. (Tr. 305.) Therefore, the ALJ determined that absent substance abuse, Biegel would nonetheless have significant occupational limits. (Tr. 307.) But the ALJ further determined that "[i]f [Biegel] stopped the substance abuse, the claimant would not have an impairment or combination of impairments" that would render her totally disabled. (Tr. 305.) Assessing the "paragraph B" criteria, the ALJ determined that, absent substance abuse, Biegel would suffer moderate restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence, and pace, and no episodes of decompensation. (Tr. 306.) The ALJ found that, without substance abuse, Biegel's residual functional capacity would allow her to work if limited to simple, routine, and competitive tasks with only occasional changes in the work setting and with minimal interaction with others. (Tr. 307.)

11

The ALJ's determination is well-supported. Biegel's medical history is replete with indicia of her alcohol and substance abuse. In addition to her criminal history related to substance and alcohol abuse, recounted above, Biegel has attended in-patient rehabilitation four times. (Tr. 365, 372.) The ALJ thoroughly analyzed and recounted the close link between Biegel's mental limitations and her alcohol and substance abuse. (Tr. 302-304.) For example, Biegel presented to the emergency room in February of 2010 after suicidal ideations and cutting. (Tr. 1253.) She had a blood alcohol level of .069 and felt hopeless with a low mood. (Tr. 1253, 1258.) However, after spending several days at the hospital—wherein her medication regimen was strictly administered and her use of alcohol and drugs ceased—Biegel was reported to have a much more positive affect and talked about going back to college. Id. Similarly, her hospital admission for cutting in May 2010 was accompanied by marijuana use and additional drug use. (Tr. 1152.) Her hospital admission for suicidal ideation in August of 2010 followed three months of failing to take her prescribed medication and a week of drinking, including drinking seven alcoholic beverages earlier in the same day. (Tr. 1270.)

The ALJ wrote that "objective evidence supports that [Biegel] does have poor coping skills and frequent relapses of alcohol and drug abuse. During these times, [Biegel's] symptoms are exacerbated with an increase in racing thoughts, lowered self-esteem, and increased depression." (Tr. 303) Thus, the ALJ determined that "when [Biegel] is abusing substances and noncompliant with her medical treatment, her symptoms would cause her to be off task . . . even when her work is limited to performing simple, routine, and repetitive tasks." (Tr. 304) The ALJ's determinations are supported by the objective medical evidence.

Biegel argues that she "continues to struggle despite maintaining sobriety" (Doc. No. 12 at 9) and cites as evidence her treating nurse's assessment that she has limited judgment,

understanding, and memory skills. (Doc. No. 12 at 9; Tr. 1303-1307.) But the ALJ properly noted that Nurse Greening's testimony is not an acceptable medical source. (Tr. 304.) Moreover, the ALJ noted that Greening's checkbox form (indicating Biegel's limitations) constituted a conclusory opinion. Id. Indeed, an ALJ is entitled to assign the opinions of a medical provider little weight where such opinions are conclusory opinions contradicted by other objective medical evidence; checkmarks on a form are often a prime example of such conclusory opinions. See Social Security Ruling 96–2p; Stormo v. Barnhart, 377 F.3d 801, 805–06 (8th Cir. 2004); Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001).

Greening's assertion that alcohol and substance abuse does not contribute to Biegel's limitations is also conclusory. (Tr. 1306) But even when the ALJ took Greening's testimony into account (Tr. 304, "the undersigned considered Ms. Greening's opinion as she has a treating relationship with the claimant"), he found that Biegel would be limited to simple, routine, and repetitive tasks rather than unable to work at all, noting her exacerbation of symptoms in the context of alcohol and drug use. Id.

The ALJ also addressed Biegel's inconsistent GAF scores.[1] Biegel was assigned GAF scores by various providers that spanned from the low 40s to the upper 60s and even 70s. See, e.g., Tr. 166 (GAF of 44), 195 (GAF of 45), 1191 (GAF of 65), 1194 (GAF of 72). The ALJ noted, however, that the lower reported GAF scores were heavily linked to Biegel's substance abuse. (Tr. 307, 313.) For example, Greening wrote that Biegel "continues to be noncompliant

---

[1] The GAF, or Global Assessment of Functioning, is a numeric scale ranging from zero to one hundred used to rate social and psychological functioning. Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. Am. Psychiatric Ass'n 1994) (DSM—VI). A GAF of 41 to 50 indicates the individual has "[s]erious symptoms ... or any serious impairment in social, occupational, or school functioning . . ." Id. A GAF of 51 to 60 indicates the individual has "[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning . . ." Id. A GAF of 61 to 70 indicates "mild symptoms." Id. A GAF of 71 to 80 suggests that, if "symptoms are present, they are transient and expectable reactions to psychosocial stressors . . ." Id.

13

with her medications . . . Despite her noncompliance with treatment, her treating provider opines that she is only displaying moderate to mild symptoms, as reflected by her GAF scores." (Tr. 311, citing Tr. 1365.)

Additionally, while Biegel was sometimes assessed low GAF scores, these low scores were usually related to substance abuse. (Tr. 1256) In her hospital admission for attempted suicide, her GAF was noted to be 40, but she was also diagnosed with "[s]ubstance induced mood disorder" and "drug abuse." Id. Moreover, Biegel's low GAF scores were intermittent, and other examinations produced much higher GAF scores of 72 in August 2011 (Tr. 1194), 65 in January 2012 (Tr. 1189), and 64 in April of 2012 (Tr. 1187). And finally, the Eighth Circuit has repeatedly held that a GAF score alone is not controlling. See Halverson v. Astrue, 600 F.3d 922, 931 (8th Cir. 2010) (citing Juszczyk v. Astrue, 542 F.3d 626, 632–33 (8th Cir. 2008) (an ALJ's decision not to rely on the treating physician's GAF assessment is supported by substantial evidence where contradictory medical evidence existed); Hudson ex rel. Jones v. Barnhart, 345 F.3d 661, 666–67 (8th Cir. 2003) (an ALJ's decision that the GAF score did not appear to reflect the claimant's abilities was supported by the record). It was reasonable for the ALJ to conclude that Biegel's low GAF scores were heavily linked to her substance abuse, and that by ameliorating her substance abuse issues Biegel's GAF score would be in a range less indicative of limitation. Again, the ALJ's determination that Biegel's "deficits do not lead to an inability to work" is supported by substantial evidence. (Tr. 313.)

After a thorough review of Biegel's medical history and history of alcohol and substance abuse, the ALJ determined that Biegel's impairments are not disabling when Biegel is not engaged in alcohol and substance abuse. This Court's standard on review is not whether substantial evidence exists in opposition to the ALJ's conclusion, but whether substantial

evidence exists to support it. Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010) (internal citation omitted); Krogmeier, 294 F.3d at 1022. For the reasons stated, the Court concludes that substantial evidence exists to support the ALJ's finding and, ergo, affirms the ALJ's conclusion.

**New Evidence**

Next, Biegel contends that the Appeals Council failed to consider new evidence showing that her mental limitations persist despite sobriety, and that her physical limitations, including back and knee problems not thoroughly addressed at the hearing, constitute severe limitations. (Doc. 12 at 11.) Biegel filed her application with the Social Security Administration on September 16, 2010, had her hearing on September 19, 2012, and received her unfavorable decision on January 18, 2013. (Tr. 296, 314.) She submitted new medical records to the Appeals Council, some of which were dated prior to the ALJ's decision but many of which were not. (Doc. No. 12 at 12; see generally Tr. 156-292.) The Appeals Council reviewed the additional evidence. (Tr. 2) In denying Biegel's request, the Appeals Council considered newly submitted evidence pertaining to the period prior to January 18, 2013, but disregarded information pertaining to a later time. (Tr. 2.) For the reasons stated below, this Court finds that the newly submitted evidence does not require remand of the ALJ's decision, and affirms the denial of benefits.

*New Evidence of Mental Impairment*

Biegel's new evidence related to her mental condition consists primarily of a September 2012 assessment in which she was assigned a GAF score of 44 following two months of sobriety, and a January 7, 2013 assessment in which she was assigned a GAF score of 45. (Doc. No. 12 at 12; Tr. 157-158, 166, 193-195.)[2] These newly-submitted records do not undermine the

---

[2] Additional newly-submitted records were generated following the date of the ALJ's decision and are addressed below.

ALJ's findings. Biegel's two-month period of sobriety was self-reported in the September 2012 assessment. (Tr. 157) The January 2013 assessment included a note that Biegel was in remission for alcohol abuse and dependence (Tr. 195) and further noted steps being taken to adjust Biegel's medications, indicating that the low GAF score would likely improve with proper medication. (Tr. 195.) For the reasons described in the preceding section, the ALJ's findings with regard to Biegel's mental impairments are supported by substantial evidence, and the existence of two additional records that give low GAF scores does not undermine such findings.

The remainder of pertinent, newly-submitted mental health records relate mainly to treatment at Mark Twain Behavioral Health from February 19, 2013 through August 8, 2013; the Appeals Council correctly noted that these records are not proper for consideration. (Tr. 2.) Remand is not proper based on records that were generated after an ALJ's decision. "[M]edical evidence obtained after an ALJ decision is material if it relates to the claimant's condition on or before the date of the ALJ's decision." *Cunningham v. Apfel,* 222 F.3d 496, 502 (8th Cir. 2000). Instead, if Biegel believes these newly-submitted records support a deterioration in her condition, her recourse is to file a new application for benefits with a later disability onset date. *See, e.g., Tarwater v. Astrue,* No. 4: 10CV1974 LMB, 2012 WL 381783, at *18 (Feb. 6, 2012) ("If plaintiff's condition worsens, plaintiff's recourse is to file a new application for benefits, alleging an onset of disability after the date of the ALJ's decision in this case."). The newly-submitted evidence related to mental impairment does not require remand.

*New Evidence of Physical Impairment*

Biegel also argues that new evidence of physical impairments was not properly considered. (Doc. 12 at 12.) Evidence relating to Biegel's back and knee pain presented *prior* to the ALJ's decision was not particularly notable. See, e.g., Tr. 1093 (treating orthopaedist did not

believe spinal condition was source of pain), 1272 (noting a non-tender back with a normal range of motion), 1224 (noting a normal range of motion in Biegel's joints). Moreover, Biegel herself testified that, although she did experience pain in her back and her knees, she had no "major physical complaints." (Tr. 367.) She repeatedly told doctors she was not experiencing significant back pain. (Tr. 1297, 1385.) This evidence supports the ALJ's finding that "any [physical] limitations would have no more than a minimal effect . . . [the] impairment is nonsevere." (Tr. 299.)

New records submitted after the ALJ's decision focused on pain emanating from Biegel's knees. Biegel was referred to a rheumatologist, for example, after presenting at the University of Missouri for bilateral knee pain (Tr. 9-11), and x-rays of her knees showed minimal bilateral knee degenerative changes. (Tr. 12-15.) She was prescribed Lyrica and began treatment with Dr. Luvell Glanton for pain. (Tr. 129-133, 123-127.) But these diagnoses and treatments occurred *after* January 18, 2013, when the ALJ's opinion was issued; her treatment at the University of Missouri and with Dr. Glanton occurred starting January 25, 2013. (Tr. 263, 123, 118.) There is no evidence that the conditions for which Biegel was treated in early 2013 were present prior to that time; therefore, the newly-submitted evidence does not support reversal or remand of the ALJ's decision. *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997) (internal citation omitted) ("An implicit requirement is that the new evidence pertain to the time period for which benefits are sought, and that it not concern later-acquired disabilities or subsequent deterioration of a previously non-disabling condition.").

The ALJ had no ability, and certainly no obligation, to consider records created and presented after he issued his opinion. As stated above, "medical evidence obtained after an ALJ decision is material if it relates to the claimant's condition on or before the date of the ALJ's

decision." *Cunningham,* 222 F.3d at 502. Again, Biegel's recourse is not this Court's review of the ALJ's decision, but rather a new application for disability benefits with a later disability onset date. *Tarwater*, 2012 WL 381783 at *18 (Feb. 6, 2012). And because records dated after January 18, 2013, could not have been considered by the ALJ, this Court need not reach the question of whether such records would lead to remand on the merits.

Here, the Court finds the ALJ's treatment of the medical opinion evidence is supported by valid reasons and substantial evidence in the record as a whole. If Biegel believes her treatment after January 18, 2013, is indicative of a deteriorated and disabled condition, her remedy is to file a new application.

## VI. Conclusion

For these reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate judgment will accompany this Order.

Dated this 30th day of September, 2015.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**